IN THE UNITED STATED DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ERIC KNAPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.: |
| ) | |
| PENN NATIONAL GAMING & ) | |
| PRAIRIE STATE GAMING ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Eric Knapp, by and through his attorneys, O'Brien & Marquard, P.L.C., and pursuant to the Americans with Disabilities Act and Illinois Human Rights Act brings this disability discrimination and retaliation action against Defendants, Penn National Gaming ("PNG") & Prairie State Gaming ("PSG"), and alleges as follows:

**NATURE OF THE CASE**

1. This is an action for disability discrimination and retaliation brought under the Illinois Human Rights Act and the Americans with Disabilities Act after opting out of the Illinois Department of Human Rights' investigation process pursuant to 775 ILCS 5/7A-102(C)(1).

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Venue is proper in the Rock Island Division of the Central District of Illinois under 28 U.S.C. § 1391 because the discriminatory acts occurred in Rock Island County.

**THE PARTIES**

4. Plaintiff, Eric Knapp, worked for Prairie State Gaming (PSG) and Penn National Gaming (PNG) until Defendants fired him on July 30, 2020.

5. Prairie State Gaming (PSG) is a Delaware corporation with its principal place of business in Aurora, Illinois.

6. PSG operates more than 2,000 video gaming terminals and nine route offices across Illinois

7. PSG provides its customers with gaming area design assistance, marketing assistance, promotions, a rewards app for customers, and service for the video slot machines.

8. Penn National Gaming (PNG) is the sole member of PSG and is a Pennsylvania corporation with its principal place of business in Pennsylvania.

9. As of December 31, 2020, PNG operated 40 casinos and racetracks, 377 Video Gaming Technologies locations, and 43,917 slot/video game machines throughout the United States.

10. PNG is not registered to do business in Illinois.

11. During the COVID-19 pandemic, PNG provided PSG with directions and guidance on health and safety measures.

12. PNG provided PSG with human resources guidance and directives.

13. PNG and PSG share control over employees' pay and benefits, hiring and firing, discipline, supervision, and the direction of the company.

14. PNG directs and controls PSG's business activities including what services it provides customers and where it expands it casino and video gaming operations.

15. PSG and PNG are employers as defined in 42 U.S.C. §12111.

## COMMON ALLEGATIONS OF FACT

16. Mr. Knapp worked as a Route Tech Service Manager for Defendants.

17. Mr. Knapp is a person with a disability, anxiety.

18. As a child, Mr. Knapp drowned and had to be resuscitated. As a result of that traumatic incident, Mr. Knapp cannot wear anything covering his mouth and nose without suffering from severe anxiety.

19. During spring 2020, Defendants furloughed numerous employees due to the COVID-19 pandemic.

20. On June 1, 2020, Mr. Knapp returned to work after being furloughed due to the COVID-19 pandemic.

21. On June 1, 2020, Defendants had a company-wide conference call discussing COVID-19 precautions and procedures now that employees had returned to work.

22. During the June 1, 2020 conference call, Mr. Knapp asked about accommodations for employees who were unable to wear a mask due to an underlying medical condition.

23. Defendants did not provide any guidance during the conference call, instead stating they would get back to him.

24. PNG provided PSG with COVID-19 guidance that it distributed to employees.

25. When it recalled employees, Defendants requested employees wear face masks while at the office.

26. Mr. Knapp is unable to wear a facemask because of his disability—anxiety.

27. On June 1, 2020, Mr. Knapp's medical provider gave him a note stating he is unable to wear a face mask due to a medical condition.

28. Mr. Knapp and his medical provider suggested Defendants accommodate Mr. Knapp by allowing him to wear a face shield instead of a face mask.

29. Mr. Knapp provided a copy of his medical provider's note to PSG.

30. PSG placed Mr. Knapp on paid leave because he is unable to wear a face mask.

31. On July 14, 2020, Mr. Knapp returned from PTO and did not wear a face mask.

32. Mr. Knapp told his supervisor, Jason, that he was unable to wear a mask due to a medical condition. Mr. Knapp showed Jason on copy of the June 1, 2020 doctor's note.

33. Jason instructed Mr. Knapp to send a note to human resources.

34. On July 14, 2020, Mr. Knapp sent HR an email asking for guidance on what an employee should do who is unable to wear a mask.

35. In response to his July 14, 2020 email, HR told Mr. Knapp that the employee should contact HR to start the ADA accommodations process. If HR approved the accommodation, HR would issue the employee a face shield.

36. On July 14, 2020, Mr. Knapp provided HR a copy of his doctor's note. HR provided Mr. Knapp the accommodations paperwork. Mr. Knapp forwarded the accommodations paperwork to his medical provider.

37. On July 22, 2020, after he had worked almost an entire day, Jason told Mr. Knapp he was suspended.

38. Defendants suspended Mr. Knapp because he was unable to wear a face mask due to his disability.

39. On July 24, 2020, Mr. Knapp saw his medical provider. This was the first chance Mr. Knapp could get into his provider.

40. On July 24, 2020, Mr. Knapp's medical provided completed his ADA paperwork.

41. Mr. Knapp requested an accommodation of being able to wear a face shield instead of a facemask.

42. Defendants denied Mr. Knapp's accommodation.

43. Defendants fired Mr. Knapp on July 30, 2021 because he could not wear a face mask at work.

44. Defendants knew of Mr. Knapp's disability prior to the COVID-19 pandemic.

45. On October 22, 2020, Mr. Knapp filed his complaint with the Illinois Department of Human Rights via email pursuant to the Department's COVID-19 instructions.

46. On January 4, 2021, Mr. Knapp sent a follow up email to the Illinois Department of Human Rights regarding his filed complaint.

47. The IDHR cross-filed Mr. Knapp's complaint with the EEOC.

48. Mr. Knapp alleged Defendants discriminated against him based on his disability, anxiety, by refusing him a reasonable accommodation, suspending him, and discharging him.

49. Mr. Knapp further alleged Defendants retaliated against him after he requested an accommodation.

50. On March 3, 2021, Mr. Knapp opted out the Illinois Department of Human Rights' investigation processing.

51. On April 16, 2021, the Illinois Department of Human Rights issued Mr. Knapp a right-to-sue letter.

52. On August 31, 2021, the EEOC issued Mr. Knapp a Right-To-Sue Letter.

53. On September 7, 2021, Mr. Knapp's attorney received his Right-to-Sue letter from the EEOC.

54. Mr. Knapp exhausted the administrative requirements for this action.

**COUNT I – DISABILITY DISCRIMINATION**

55. Mr. Knapp restates and re-alleges Paragraphs 1 through 51 as if fully set forth herein.

56. Defendants treated Mr. Knapp differently than similarly-situated employees who did not have a disability of anxiety/claustrophobia when it engaged in the following activities:

   a. When it failed to participate in the interactive process to determine whether it could reasonably accommodate Mr. Knapp's disability;

   b. When it suspended him because he was unable to wear a face mask due to his disability;

   c. When it suspended him because he asked for a reasonable accommodation for his disability, namely, the ability to wear a face shield instead of a face mask;

   d. When it fired him because he was unable to wear a face mask due to his disability; and

   e. When it fired him because he asked for a reasonable accommodation for his disability, namely, the ability to wear a face shield instead of a face mask.

57. Defendants' discriminatory actions altered the conditions of Mr. Knapp's employment.

58. Defendants' actions violated the Illinois Human Rights Act and the Americans with Disabilities Act.

59. Mr. Knapp is entitled to and seeks recovery of compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, punitive damages, and any such other damages as this Court deems necessary to make him whole.

## COUNT II – RETALIATION

60. Mr. Knapp restates and re-alleges Paragraphs 1 through 59 as if fully set forth herein.

61. Mr. Knapp informed Defendants he had a disability, anxiety, and that he was going to be requesting a reasonable accommodation for that disability.

62. Mr. Knapp requested an accommodation from Defendants for his disability, anxiety.

63. Defendants suspended and then terminated Mr. Knapp because he requested an accommodation for his disability.

64. Defendants actions violated the Illinois Human Rights Act, the Americans with Disabilities Act (42 U.S.C. § 12203).

65. Mr. Knapp is entitled to and seeks recovery of compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, punitive damages, and any such other damages as this Court deems necessary to make him whole.

## JURY DEMAND

Mr. Knapp demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Knapp hereby requests this Court enter judgment in his favor and against Defendants compensatory damages, reinstatement, back pay, attorney's fees, costs, interest, punitive damages, and any such other damages as this Court deems necessary to make him whole, and for such other and further relief as this Court deems just and equitable.

Dated: November 29, 2021     Respectfully submitted,

/S/Kelsey A. W. Marquard
Kelsey A. W. Marquard, ARDC 6311205
O'Brien & Marquard, P.L.C.
2322 East Kimberly Road, Suite 140S
Davenport, Iowa 52807
563-355-6060 Telephone
563-355-6666 Facsimile
kawm@emprights.com  Email

ATTORNEY FOR PLAINTIFF